This case involves an issue of first impression in Alabama concerning pretextual arrests.
The dispositive issue is whether the defendant's confession should have been suppressed on the basis that his confession was the product of an illegal pretextual arrest. More specifically, should the defendant's voluntary admission to the killing be excluded from evidence because the police arrested the defendant under an outstanding warrant for a different crime, intending to question him solely about the killing to which he later admitted.
The victim, John C. Johnson, was found murdered in his apartment on January 31, 1990. The police began looking for the defendant, Christopher M. Scarbrough, the following day after learning from Johnson's neighbors that Scarbrough had been seen with Johnson at the apartment complex on the day of the murder. On February 7, 1990, the police talked with Scarbrough's wife but were unable to locate Scarbrough. The wife stated that she had seen him only sporadically in the past few weeks but that she would tell him that the police were looking for him. Scarbrough telephoned the police department and left messages stating that he would call back later. He did not leave a telephone number at which he could be reached.
The police then ran Scarbrough's name through the state computer files and found that there was an outstanding 1988 warrant against him for failure to pay traffic tickets. On March 20, 1990, he was arrested on the unpaid traffic ticket warrant. After being read his Miranda[1] rights, Scarbrough was questioned by the police officer investigating the murder. He subsequently admitted that he had stabbed Johnson; he claimed that Johnson had made a homosexual advance toward him and that in response he had grabbed a knife from the kitchen counter and had stabbed Johnson with it.
Scarbrough was indicted for capital murder. Before trial, he filed a motion to *Page 1008 
suppress his statement concerning the killing. The trial court held that the arrest on the two-year old traffic ticket warrant was unnecessary, because, it found, there was probable cause to arrest Scarbrough for murder; the court denied the motion to suppress. The jury found Scarbrough guilty of the lesser included offense of felony-murder.
On appeal, Scarbrough argued that his statement should have been suppressed on the grounds that there had been no probable cause for his arrest and that his statement was the product of an illegal pretextual arrest. The Court of Criminal Appeals held that there was no probable cause to arrest him for murder.621 So.2d 996. However, that court further held that the statement was not the product of an illegal pretextual arrest, and it affirmed the conviction.
We agree with the Court of Criminal Appeals that the police lacked probable cause to arrest Scarbrough for murder. We now turn to the issue whether his incriminating statement should have been suppressed on the basis that his arrest was the product of an illegal pretextual arrest.
Scarbrough argues that the police arrested him on a valid traffic warrant but would not have done so but for a desire to question him about the killing. He contends that his arrest was a mere "pretext" to question him about the killing and that the arrest therefore violated his Fourth Amendment right to be free from unreasonable searches and seizures — that the arrest on the traffic ticket warrant was merely a guise to avoid what he says was a lack of probable cause to arrest him for murder.
The Fourth Amendment to the United States Constitution states:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Addressing the question of pretextual arrests, the United States Supreme Court held in 1932 that "an arrest may not be used as a pretext to search for evidence." United States v.Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877
(1932). In Lefkowitz, prohibition agents had a valid warrant to arrest the defendant for conspiracy to sell liquor. During the arrest, agents searched the defendant's desks, cabinets, and baskets, seizing certain papers and claiming them to be evidence of the conspiracy. The Supreme Court held that the searches were exploratory and general and had been made solely to find evidence of a conspiracy. There was nothing in the record to support a conclusion that the crime of conspiracy was being committed in the presence or plain view of the prohibition agents. The complaint that was made the basis of the warrant did not allege that the defendant's office was a place where liquor was stored or sold. The valid arrest warrant did not give the agents the authority to search out and scrutinize everything in the room in order to determine whether any item in the office was used in the alleged conspiracy.
Scarbrough does not challenge the validity of his arrest on the outstanding traffic warrant. Rather, he challenges the police officer's motives in arresting him on the traffic warrant — he says the sole motive was to question him about the murder. That is, he challenges the validity of the search (which he says consisted of questions concerning the murder) incident to his arrest on the valid traffic ticket warrant.
The United States Supreme Court has not adopted a test for determining whether an arrest was pretextual and therefore unlawful. The Circuit Courts of Appeals are split on which test to adopt concerning pretextual arrests.
Scarbrough asks this Court to adopt the subjective test set out in United States v. Valdez, 931 F.2d 1448 (11th Cir. 1991). In Valdez, police had been conducting surveillance of a residence for suspected drug trafficking when they observed two men place large garbage bags in Valdez's automobile. Shortly thereafter, Valdez left the *Page 1009 
residence. The officer in charge gave a description of Valdez's car over the police radio. Another police officer saw Valdez's car and followed it. Valdez made a right turn at a red traffic signal, causing another driver to abruptly slow down in order to avoid hitting Valdez. The police officers stopped Valdez, using the traffic violation as the basis for the stop. Valdez consented to a search of his car, where the officers found two garbage bags containing cocaine. The Court of Appeals for the Eleventh Circuit held that the stop of Valdez was pretextual and that Valdez's consent to a search was therefore not voluntary.
In Valdez, the Court of Appeals held that "the proper inquiry is whether a reasonable officer would have made the seizure in the absence of improper motivation," 931 F.2d at 1450 (emphasis in original), citing United States v. Smith, 799 F.2d 704, 708
(11th Cir. 1986). The test requires " 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time of the challenged action taken.' " 931 F.2d at 1450. "The proper inquiry, again, is not whether the officer could validly have made the stop but whether under the same circumstances a reasonable officer would
have made the stop in the absence of the invalid purpose."Id. (emphasis in original). The Courts of Appeals for the Ninth and Tenth Circuits also apply the subjective test. See UnitedStates v. Guzman, 864 F.2d 1512 (10th Cir. 1988); United Statesv. Smith, 802 F.2d 1119 (9th Cir. 1986).
Other circuits apply an objective test. United States v.Cummins, 920 F.2d 498 (8th Cir. 1990); United States v. Trigg,878 F.2d 1037 (7th Cir. 1989); United States v. Causey,834 F.2d 1179 (5th Cir. 1987); United States v. Nersesian,824 F.2d 1294 (2d Cir. 1987), cert. denied, 484 U.S. 958, 108 S.Ct. 357,98 L.Ed.2d 382 (1987); United States v. Hawkins, 811 F.2d 210
(3d Cir. 1987), cert. denied, 484 U.S. 833, 108 S.Ct. 110,98 L.Ed.2d 69 (1987).
In Causey, 834 F.2d 1179, the Court of Appeals for the Fifth Circuit, sitting en banc, expressly rejected the subjective test that had previously been applied in that circuit. An anonymous tipster notified police that Causey had been involved in a recent bank robbery. The police lacked probable cause to arrest and interrogate Causey concerning the bank robbery. In looking for a way to apprehend and question Causey, the police discovered an outstanding arrest warrant for failure to appear in court. The police arrested Causey on the failure to appear warrant, gave him his Miranda rights, and questioned him about the bank robbery. Causey later confessed to the bank robbery. He filed a motion to suppress the confession on the basis that the arrest on the misdemeanor warrant was a "pretext" for questioning him about the robbery.
The court in Causey held that where a police officer has taken no action except what the law objectively allows, the officer's subjective motives are not relevant to the suppression inquiry. In adopting the objective test, the Fifth Circuit cited three Supreme Court cases,[2] indistinguishable in principle from Causey, holding that "where police officers are objectively doing what they are authorized to do, . . . the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted." 834 F.2d at 1184.
Recently, the Supreme Court again reiterated its preference for an objective test in the context of the Fourth Amendment. *Page 1010 
"Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer."Horton v. California, 496 U.S. 128, 136-39, 110 S.Ct. 2301,2308-09, 110 L.Ed.2d 112 (1990) (holding that theFourth Amendment does not prohibit the warrantless seizure of evidence in plain view even though the discovery of the evidence was not inadvertent).
Following the Supreme Court's preference for an objective standard, we adopt the objective test for determining whether an arrest was pretextual and therefore unlawful. As long as the police officer is doing only what is objectively authorized and legally permitted, the officer's subjective intent in doing it is irrelevant.
In the instant case, the police officers arrested Scarbrough pursuant to a valid arrest warrant. After advising him of hisMiranda rights, they merely inquired whether he wanted to discuss the murder. Their conduct was reasonable under the objective test and did not violate the Fourth Amendment. Therefore, the Court of Criminal Appeals properly affirmed the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS and INGRAM, JJ., concur.
HOUSTON and STEAGALL, JJ., concur in the result.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] The Fifth Circuit cited Scott v. United States, 436 U.S. 128,98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) (police officer's interception of virtually all calls on a tapped line of suspected drug dealer not an unreasonable search under an objective standard); United States v. Villamonte-Marquez,462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) (customs agent's boarding a ship for the purpose of examining ship documentation under 19 U.S.C. § 158(a) is reasonable under the Fourth Amendment even though agents were allegedly following an informant's tip that drugs were aboard); Maryland v. Macon, 472 U.S. 463,105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (officer's purchase of obscene materials from adult bookstores with marked money not a warrantless seizure under an objective test).