KELLUM, Judge.
Derendrick Laquinton Landrum was arrested and charged with unlawful possession of a controlled substance, a violation of § 13A-12-212(a)(l), Ala.Code 1975. Landrum filed a pretrial motion to suppress the evidence seized as the result of an investigatory stop, namely, a plastic bag containing what was later determined to be cocaine. Following an evidentiary hearing, the trial court granted Landrum’s motion to suppress.[1] Pursuant to Rule 15.7, Ala. R.Crim. P., the State appeals the circuit court’s ruling.
The evidence presented at the suppression hearing established the following: On December 21, 2006, at approximately 10:30 p.m., Cpl. D.K. Corkran was patrolling the Greater Washington Park area in Montgomery when he drove down Sixth Street and observed a Mercury Grand Marquis automobile occupied by two individuals parked on the side of the road next to a vacant lot. Cpl. Corkran observed the driver, later identified as Landrum, get out of the vehicle, leaving the driver’s side door open, walk to a nearby house, and knock on the door. Cpl. Corkran testified that Landrum returned to his vehicle after no one answered the door. Cpl. Corkran continued patrolling the area, returning to Sixth Street a few minutes later. As Cpl. Corkran drove down Sixth Street for the second time, he saw Landrum get out of his vehicle, leave the driver’s side door open, and return to the same house. Cpl. Corkran testified that he then drove up to the vehicle and asked Landrum, who had returned to the vehicle, if anything was wrong with his vehicle. Cpl. Corkran testified that he found it suspicious that Landrum was parked next to a vacant lot. Cpl. Corkran explained that the area in which he saw Landrum was known as a high-traffic drug area and that he suspected Landrum was involved in possible drug activity. Cpl. Corkran asked Landrum to come over to his patrol vehicle. After talking to Landrum briefly, Cpl. Corkran *426 decided to perform a pat-down search of Landrum for the officer’s safety, then instructed Landrum to put his hands on the back of the patrol vehicle. According to Cpl. Corkran, Landrum reached into his pants pocket. Corporal Corkran instructed Landrum a second time to put his hands on the back of the patrol vehicle. As Landrum withdrew his hand from the pants pockets, Cpl. Corkran saw Landrum drop a plastic bag containing a white, powdery substance on the ground. On cross-examination, Corporal Corkran testified that he did not have evidence of Landrum committing a crime before he asked Land-rum to step toward the patrol vehicle.
On appeal, the State contends that the circuit court erred by granting Landrum’s motion to suppress. The State argues that, based on the circumstances, Cpl. Cor-kran had reasonable suspicion of illegal conduct to conduct a “stop and frisk” pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004). In State v. Hill, 690 So.2d 1201 (Ala.1996), the trial court granted a motion to suppress following a hearing at which it heard only the testimony of one police officer. Regarding the applicable standard of review, the Alabama Supreme Court stated, in pertinent part, as follows:
“ ‘Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted). The trial judge’s ruling in this case was based upon his interpretation of the term ‘reasonable suspicion’ as applied to an undisputed set of facts; the proper interpretation is a question of law.”
State v. Hill, 690 So.2d at 1203-04.
The dissent relies on State v. Ivey, 709 So.2d 502 (Ala.Crim.App.1997), a case in which this court distinguished the Alabama Supreme Court’s decision in Hill in order to apply the “clearly erroneous” standard of review. 709 So.2d at 505. In Ivey, this court explained the distinction, saying, “[i]n Hill, no facts were presented that conflicted with or undermined the testimony of the only witness; moreover, the defendant adopted in his brief the statement of facts set out in the State’s brief.” 709 So.2d at 505.
Judge Welch’s dissent refers to and quotes several excerpts from the record in which the circuit court either commented on Cpl. Corkran’s testimony or requested further explanation from Cpl. Corkran. The dissent suggests that the comments made and the questions asked by the trial court created the conflicts in Cpl. Cor-kran’s testimony. Unlike the instant case, there is no indication in Ivey that the conflicts in the testimony of the police officer were created by direct questioning from the trial court. The conflicts referred to in Ivey pertained to ambiguities in the police officer’s testimony and to a video introduced into evidence that appeared to contradict the police officer’s testimony. Ivey, 709 So.2d at 505.
In the instant case, Cpl. Corkran was the sole witness to testify at the suppression hearing. Any conflicts in the evidence presented at the suppression hearing were a direct result of questioning by, or comments made by, the circuit court and are indicative of the circuit court’s *427 ultimate ruling on the motion to suppress. Given the Alabama Supreme Court’s holding in Hill, the only issue before this court is whether the circuit court correctly applied the law to the facts presented at the suppression hearing, and we afford no presumption in favor of the circuit court’s ruling.[2]
“The United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that ‘a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.’ 392 U.S. at 22, 88 S.Ct. at 1880. The standard for allowing a Terry stop is whether there is a reasonable suspicion that ‘the person being stopped has engaged in some type of criminal activity.’ Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala.1986).”
Ex parte Carpenter, 592 So.2d 627, 629 (Ala.1991).
“In reviewing reasonable suspicion determinations, courts must look at the ‘ “totality of the circumstances” ’ to see whether the detaining officer had a ‘ “particularized and objective basis” ’ for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). ‘This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that “might well elude an untrained person.” ’ Arvizu, 534 U.S. at 273, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690). A determination of probable cause should not be based on a ‘divide-and-conquer analysis’ but should consider a series of acts, each of which is ‘perhaps innocent in itself,’ together in determining whether they warrant further investigation. Terry v. Ohio, 392 U.S. at 22, 88 S.Ct. 1868.”
State v. Odom, 872 So.2d 887, 890 (Ala.Crim.App.2003).
In United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the United States Supreme Court explained:
“Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like ‘articulable reasons’ and ‘founded suspicion’ are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances— the lohole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, e.g., Brown v. Texas, ... 443 U.S. [47 (1979) ]; United States v. Brignoni-Ponce, 422 U.S. [873,] 884 [ (1975) ].
449 U.S. at 417-18, 101 S.Ct. 690 (emphasis added).
One such basis for suspecting criminal activity is the location where the investigative stop is made. Fullenwilder *428 v. State, 946 So.2d 899 (Ala.Crim.App.2006).
“ ‘An individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a “high crime area” among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144, 147-48 (1972).’ ”
Fullenwilder, 946 So.2d at 902 (quoting Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).
In the instant case, Cpl. Corkran saw Landrum at 10:30 p.m. in an area known as a “high traffic drug area.” Landrum had parked his vehicle in front of a vacant lot on a dead-end street. On two occasions, within a short period of time, Cpl. Corkran saw Landrum get out of his vehicle, with the engine still running, knock on the door of a nearby house, and get back in his vehicle after no one answered the door. While we recognize that there is nothing inherently suspicious about the driver of a vehicle knocking on the door of a house while a passenger remains in the vehicle, with or without the engine running, those facts considered together as a whole, see United States v. Cortez, supra, with the time of evening that the event took place, the history of drag activity in the area, and the fact that Landrum repeated those actions, created sufficient cause to authorize Cpl. Corkran to approach Landrum and to investigate his behavior. Under the facts of this case, Cpl. Corkran was able to articulate a sufficiently particularized basis for a suspicion to justify investigating Landrum. United States v. Cortez, supra.
Based on the foregoing, we reverse the order of the circuit court and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, J., concurs.
WISE, P.J., concurs in the result.
WELCH, J., dissents, with opinion.

. The circuit court did not make any written findings of fact when it granted Landrum's motion to suppress.

. It is well settled that this court is bound by the decisions of the Alabama Supreme Court, and this court " 'is without authority to overrule the decisions of [that] court.’ " Harris v. State, 2 So.3d 880, 902 (Ala.Crim.App.2007)(quoting Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972)). See also § 12-3-16, Ala.Code 1975.