KELLUM, Judge.
The appellant, Lorenzo J. Benson, was arrested and charged with unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Ala.Code 1975, trafficking in cocaine, a violation of § 13A-12-231, Ala.Code 1975, and possession of drug paraphernalia, a violation of § 13A-12-260, AIa.Code 1975. Pursuant to a negotiated plea agreement, Benson pleaded guilty to possession of marijuana in the first degree and the remaining charges were dismissed. The circuit court subsequently sentenced Benson to 10 years’ imprisonment; the court split the sentence and ordered Benson to serve 12 months in the Hale County jail followed by 3 years’ supervised probation. The circuit court further ordered Benson to pay all mandatory fines, fees, and assessments.
Before pleading guilty, Benson filed a pretrial motion to suppress evidence and statements to police on the grounds that *57 the search and seizure in this case was illegal. Following an evidentiary hearing, the circuit court denied Benson’s motion to suppress. Benson pleaded guilty but reserved the right to appeal the circuit court’s denial of his motion to suppress the narcotics recovered from his house and his statement to police. This appeal followed.
At the suppression hearing, the circuit court considered the following evidence. On November 30, 2011, Timothy Dillard, an officer with the Hale County Sheriffs Department, was notified by the United States Marshal’s Office that they had an arrest warrant for a person named Michael Nolan. Nolan was wanted for attempted murder in Tuscaloosa County. Dillard “put word out on the street to a couple of [his] contacts” and received a telephone call around 3:00 p.m. from a reliable confidential informant who informed Dillard that Nolan was at Benson’s house playing video games. (R. 5.) Benson’s house was known as a house where drugs were sold, and drug arrests had been made there on previous occasions.
Dillard notified the United States Marshal’s Office that he had received a tip from a reliable confidential informant that Nolan was at Benson’s residence. The agents from the Marshal’s Office met with officers from the Moundville Police Department and traveled to Benson’s house for the purpose of arresting Nolan. The officers arrived at Benson’s house between 3:30 and 4:30 p.m. Although the officers possessed an arrest warrant for Nolan, they had no search warrant for Benson or his house. The agents from the Marshal’s Office knocked on the front door and then entered Benson’s house while Dillard and another officer guarded the back of the residence.
When the agents entered the house, Nolan was sitting on the couch. The agents saw Benson toss an unknown amount of crack cocaine on the floor when they entered the house. When Dillard entered the residence seconds after the agents, they informed Dillard of Benson’s actions. Dillard saw, in plain view, what was later determined to be 46 grams of crack cocaine lying on the floor; he also saw a half-pound bag of what appeared to be marijuana in plain view on a table. Benson and three other males were in the house. The evidence was secured and sent to the Alabama Department of Forensic Sciences for testing. A drug-analysis test confirmed that the two substances found in the residence were cocaine and marijuana.
Benson was advised of his Miranda[1] rights and proceeded to make a statement to police. At the suppression hearing, Benson testified that the house where the search took place had been his residence for over a year and that he lived there alone. He also testified that everything in the house belonged to him.
Benson’s sole contention on appeal is that the circuit court erred in denying his motion to suppress the evidence as having been illegally seized. Specifically, Benson argues that the evidence seized from his house and his subsequent statement to police should be suppressed because, he says, officers entered his house without a search warrant and did not meet any of the exceptions for a warrantless search. Benson further argues that his statement should also have been excluded as “fruit of the poisonous tree.”
In State v. Landrum, 18 So.3d 424 (Ala.Crim.App.2009), this Court explained:
“ ‘This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dis *58 pute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).’ State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004). In State v. Hill, 690 So.2d 1201 (Ala.1996), the trial court granted a motion to suppress following a hearing at which it heard only the testimony of one police officer. Regarding the applicable standard of review, the Alabama Supreme Court stated, in pertinent part, as follows:
“‘“Where the evidence before the trial court was undisputed the ore ten-us rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.” Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted). The trial judge’s ruling in this case was based upon his interpretation of the term “reasonable suspicion” as applied to an undisputed set of facts; the proper interpretation is a question of law.’
“State v. Hill, 690 So.2d at 1203-04.”
18 So.3d at 426. Because the evidence presented at the suppression hearing is not in dispute, the only issue before this Court is whether the circuit court correctly applied the law to the facts presented at the suppression hearing, and we afford no presumption in favor of the circuit court’s ruling.
“The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and it provides that search warrants shall be issued only upon a finding of probable cause.” McIntosh v. State, 64 So.3d 1142, 1145 (Ala.Crim.App.2010). We have explained:
“ ‘Whether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). “Probable cause exists where all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.” Sheridan v. State, 591 So.2d 129, 130 (Ala.Crim.App.1991).’ State v. Stallworth, 645 So.2d 323, 325 (Ala.Crim.App.1994).”
Woods v. State, 695 So.2d 636, 640 (Ala.Crim.App.1996).
It is well settled that
“[wjarrantless searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala.1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry [v. Ohio, 392 U.S. 1 (1968) ] ‘stop and frisk’ situation. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the bürden falls upon the State to show that the search falls within an exception. Kinard v. State, 335 So.2d 924 (Ala.1976).”
Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995). In other words, for the entry into Benson’s home to be legal, law-enforcement officials not only had to have probable cause to search, but also exigent circumstances had to exist that justified the warrantless entry. See Cameron v. State, 861 So.2d 1145, 1149 (Ala.Crim.App.2003) (“To justify a warrantless entry and search, the state needs to show both the existence of probable cause and exigent circumstances.”).
*59 In Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the United States Supreme Court addressed the propriety of a warrantless entry into a residence of a third party who was not the subject of an arrest warrant. In Steagald, agents with the Drug Enforcement Administration received a tip from a confidential informant that Ricky Lyons, a federal fugitive, could be reached at a certain telephone number within 24 hours. Agents also discovered that Lyons had an outstanding warrant for his arrest. After agents secured the address that corresponded to the telephone number, they drove to the address to search for Lyons. Agents saw two men, one of whom was Steagald, standing outside the house. The agents searched the men and determined that neither was Lyons. Agents then entered the house but did not find Lyons; however, during the search of the house ari agent observed what he believed to be cocaine. After this discovery, an officer went to obtain a search warrant. In the meantime, a second search was conducted during which additional incriminating evidence was found. A third search conducted pursuant to a search warrant resulted in agents discovering 43 pounds of cocaine inside the house. Steagald was arrested and indicted on federal drug charges. Steagald subsequently filed a motion to suppress the drug evidence; that motion was denied.
On appeal, the United States Supreme Court framed the issue before it as follows:
“The question before us is a narrow one. The search at issue here took place in the absence of consent or exigent circumstances. Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See Payton v. New York, 445 U.S. 573 (1980); Johnson v. United States, 333 U.S. 10, 13-15 (1948). Thus, as we recently observed: ‘In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.’ Payton v. New York, supra, 445 U.S., at 590. See, Coolidge v. New Hampshire, 403 U.S. 443, 474-475, 477-478 (1971); Jones v. United States, 357 U.S. 493, 497-498 (1958); Agnello v. United States, 269 U.S. 20, 32-33 (1925). Here, of course, the agents had a warrant — one authorizing the arrest of Ricky Lyons. However, the Fourth Amendment claim here is not being raised by Ricky Lyons. Instead, the challenge to the search is asserted by a person not named in the warrant who was convicted on the basis of evidence uncovered during a search of his residence for Ricky Lyons. Thus, the narrow issue before us is whether an arrest warrant — as opposed to a search warrant — is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances.”
Steagald, 451 U.S. at 211-12 (footnote omitted). Finding an arrest warrant alone was inadequate to protect Fourth Amendment interests, the United States Supreme Court held that in the absence of exigent circumstances or consent, law-enforcement officers were prohibited from searching for the subject of an arrest warrant in a third party’s home without first obtaining a search warrant. Steagald, 451 U.S. at 216. *60 In so holding, the Supreme Court addressed the concerns of requiring law-enforcement officers to obtain search warrants before entering the residence of a third party to make an arrest, stating:
“First, the situations in which a search warrant will be necessary are few. As noted in Payton v. New York, [445 U.S. 573, 602-603 (1980) ], an arrest warrant alone will suffice to enter a suspect’s own residence to effect his arrest. Furthermore, if probable cause exists, no warrant is required to apprehend a suspected felon in a public place. United States v. Watson, 423 U.S. 411 (1976). Thus, the subject of an arrest warrant can be readily seized before entering or after leaving the home of a third party. Finally, the exigent-circumstances doctrine significantly limits the situations in which a search warrant would be needed. For example, a war-rantless entry of a home would be justified if the police were in ‘hot pursuit’ of a fugitive. See United States v. Santana, 427 U.S. 38, 42-43 (1976); Warden v. Hayden, 387 U.S. 294 (1967). Thus, to the extent that searches for persons pose special problems, we believe that the exigent-circumstances doctrine is adequate to accommodate legitimate law enforcement needs.
“Moreover, in those situations in which a search warrant is necessary, the inconvenience incurred by the police is simply not that significant. First, if the police know of the location of the felon when they obtain an arrest warrant, the additional burden of obtaining a search warrant at the same time is miniscule. The inconvenience of obtaining such a warrant does not increase significantly when an outstanding arrest warrant already exists.”
Steagald, 451 U.S. at 221 (footnote omitted).
The exigent-circumstances doctrine “applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.” Missouri v. McNeely, — U.S. -, -, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013) (quoting Kentucky v. King, 563 U.S. -, -, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011)).
Furthermore,
“[T]he exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action. United States v. Satterfield, 743 F.2d [827, 844 (11th Cir.1984) ].
[[Image here]]
“The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant ...; (2) reasonable belief that the contraband is about to be removed ...; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail ...; and (5) the ready destructibility of the contraband and the knowledge ‘that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.’ ”
Cameron v. State, 861 So.2d 1145, 1151-52 (Ala.Crim.App.2003).
*61 Here, the State failed to meet its burden of demonstrating that the entry into Benson’s house in order to effectuate the lawful arrest of Nolan was justified by exigent circumstances. At the suppression hearing, the evidence indicated that the sole basis for entering Benson’s house was the confidential tip that a suspected felon was inside the house at the time. The State presented no evidence indicating that Nolan was aware that police were on his trail. There was no evidence showing that Nolan was about to leave Benson’s house. The State also failed to demonstrate that the officers had insufficient time to get a warrant under the circumstances. Although Nolan had an arrest warrant against him for attempted murder, the State did not present any evidence that indicated danger to officers or the public. Although there might have been enough evidence to give officers probable cause for a search warrant, there was not sufficient evidence of exigent circumstances to justify a warrantless entry and search of the house. Accordingly, the evidence seized from the illegal search of Benson’s house must be suppressed. Because Benson’s statement was made as a result of the, illegal search it too must be suppressed. See Foldi v. State, 861 So.2d 414, 419 (Ala.Crim.App.2002)(“[T]he use of derivative evidence can be barred if the evidence is discovered by the exploitation of a prior police illegality, if the primary taint has not been purged by some intervening act or event.”).
Based on the foregoing, the judgment of the circuit court is reversed, and this case is remanded for ■ proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOMj P.J., and WELCH, BURKE, and JOINER, JJ„ concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).